IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

HOLLY HILL MALL, LLC, )
)
          Plaintiff, )
  v. )
)    **1:16CV1131**
)
SEARS, ROEBUCK, and CO., )
)
          Defendant. )
)

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a Motion to Dismiss [Doc. #8] by Defendant Sears, Roebuck and Co. ("Sears"). For the reasons that follow, the motion is granted as to the implied covenant to operate in a commercially reasonable manner and express duty to "direct an intensive and continuous merchandising and promotion program", but denied as to the alleged failure to provide net sales reports.

I.

Nearly fifty years ago, Sears entered into a Lease with what is now Holly Hill Mall, LLC ("Holly Hill") according to which it would lease 65,000 square feet of retail space in Burlington, North Carolina. (Compl. ¶ 5 [Doc. #3]; see generally Lease and Operating Agreement (unless otherwise specified, "Lease") [Doc. #9-1][1];

---

[1] The Lease was not attached to the Complaint. Instead, Sears attached it to its brief in support of the motion to dismiss. "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage, . . . when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity.'"

Lease ¶ 6.(b).) According to the terms of the Lease, Sears does not pay a fixed base rent, but, instead has agreed to pay a percentage of its monthly net sales as rent. (Compl. ¶ 6; Lease ¶ 7.(a); Fourth Amendment to Lease ¶ 5.) Within fifteen days after the end of each calendar month, but within twenty-five days after the end of July and January, Sears is also obligated to provide Holly Hill a statement of Sears' net sales for that month. (Compl. ¶ 7; Lease ¶ 7.(d).) This "is the only mechanism through which [Holly Hill] can determine whether Sears is paying the correct amount of rent." (Compl. ¶ 7.) If Sears fails to meet any of its obligations under the Lease and fails to cure the default within fifteen days of notice of such default, Holly Hill has the right to terminate the Lease and re-enter the premises. (Compl. ¶ 8; Lease ¶ 16.)

Holly Hill alleges that Sears breached the Lease, a valid and binding contract between the parties, when Sears failed to provide net sales reports for four specified months, failed "to direct an intensive and continuous merchandising and promotional program for its business", and failed to operate in a commercially reasonable manner. (Compl. ¶¶ 13.a., 13.b., 15.) Holly Hill also asserts a claim for summary ejectment arising from Sears' failure to provide net sales reports,

---

Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004) (alterations in original) (quoting Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). Holly Hill's breach of contract and summary ejectment claims rely explicitly on the terms of the Lease; the Lease is integral to the Complaint; and Holly Hill itself cites to the attached Lease in its response brief in opposition to the motion. Therefore, it is appropriate that the Lease be considered as part of the evaluation of Sears' motion to dismiss.

2

failure "to direct an intensive and continuous merchandising and promotional program for its business", and failure to cure those breaches within fifteen days of the notice of default, permitting Holly Hill to terminate the Lease and re-enter the premises. (Id. ¶¶ 19-22.)  Holly Hill allegedly provided Sears with notice of termination of the Lease, but because Sears has refused to surrender the premises, Holly Hill alleges that it is entitled to possession. (Id. ¶¶ 23-24.)  Sears argues, though, that Holly Hill has failed to state a claim for which relief can be granted.

II.

To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  When evaluating whether the complaint states a claim that is plausible on its face, the facts are construed in the light most favorable to the plaintiff and all reasonable inferences are drawn in its favor. U.S.

3

ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557.

III.

Sears first challenges the allegation that it breached the Lease's "implied covenant to operate the business in a commercially reasonable manner." (Opening Br. in Supp. of Def. Sears' Mot. to Dismiss ("Br. in Supp.") at 7-11 (citing Compl. ¶ 14) [Doc. #9].) "The elements of breach of contract are (1) the existence of a valid contract and (2) breach of the terms of the contract." Martinez v. Univ. of N.C., 741 S.E.2d 330, 332 (N.C. Ct. App. 2012) (quoting Long v. Long, 588 S.E.2d 1, 4 (N.C. Ct. App. 2003)) (finding that the plaintiff stated a valid claim for breach of contract when he alleged that he contracted to receive a commensurate salary and that the defendant breached the contract when it refused to pay him a commensurate salary).

In the Complaint, Holly Hill alleges that the Lease is a valid and binding contract between it and Sears. (Compl. ¶ 12.) It also alleges that "in every lease in which rent is based upon the sales of a business and there is no base rent or base rent is insubstantial, there is an implied covenant to operate the business in a commercially reasonable manner." (Id. ¶ 14.) "Upon information and belief, Sears breached the implied covenant to operate by failing to operate its store at the

4

Premises in a commercially reasonable manner, which deprived [Holly Hill] of rent from net sales." (Id. ¶ 15.)

According to Sears, there is no implied duty to operate in a commercially reasonable manner and, even if there were, Holly Hill has not sufficiently alleged facts to support the alleged breach. (Id. at 7-8.) The Court agrees with both arguments. Holly Hill provides no explanation of the phrase "to operate in a commercially reasonable manner". Furthermore, while it concedes that North Carolina courts have not expressly recognized an implied duty to operate, it tries to equate such a duty with the implied duty of good faith and fair dealing. (See Pl.'s Am. Mem. of Law in Opp'n to Mot. to Dismiss ("Br. in Opp'n") at 13 [Doc. #12].) Not only did Holly Hill not allege a violation of the duty of good faith and fair dealing, but, at least on their face and without direction as to the meaning of "commercially reasonable" operation, these duties are not the same.

Even if there were such a duty to operate in a commercially reasonable manner, Holly Hill has alleged no facts to support the allegation that Sears breached the duty. There are no facts whatsoever alleging how Sears did or did not operate its business. "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

5

IV.

Next, Sears challenges the allegation that it breached an express duty "to direct an intensive and continuous merchandising and promotional program for its business." As part of its breach of contract and summary ejection claims, Holly Hill alleges that "[u]pon information and belief, Sears failed to direct an intensive and continuous merchandising and promotional program for its business." (Compl. ¶¶ 13.b., 20.)

As above, Sears argues that there is no such express duty and, if there were, Holly Hill has not pled sufficient facts to support the allegation. The Court agrees with both arguments. As part of the Operating Agreement, the Lease states,

1. (a) It is in their mutual best interest to develop and maintain a shopping center which will contain a combination of merchants which:

    . . .

    (2) Are well qualified and willing to direct an intensive and continuous merchandising and promotional program.

    . . . .

The next provision begins, "In furtherance of such purposes, Landlord and Tenant agree . . . ." (Operating Agreement ¶ 1.(b).) The language in paragraph 1.(a) does not create an express duty on the part of Sears "to direct an intensive and continuous merchandising and promotional program." Nor does Holly Hill argue otherwise in its opposition to the motion. Instead, in response, it refers to this

6

language in support of an implied covenant to operate in a commercially reasonable manner. (See Br. in Opp'n at 13-14.)

Even if there were such an express duty, there are no factual allegations to support the allegation that Sears breached the duty. Without sufficient factual allegations, the claim that Sears breached its duty to direct an intensive and continuous merchandising and promotional program fails. See, e.g., Nemet, 591 F.3d at 255.

V.

Finally, Sears challenges the allegation that the Lease authorizes Holly Hill to evict Sears for failing to provide net sales reports for several months. (Br. in Supp. at 14-19.) As part of its breach of contract claim, Holly Hill alleges that "Sears failed to provide net sales reports for several months between 2014 and 2016, including August 2014, June 2015, October 2015, and January 2016". (Compl. ¶ 13.a.) Similarly, as part of its summary ejectment claim, Holly Hill alleges that "Sears failed to provide net sales reports for several months between 2010 and 2016". (Id. ¶ 20.)

A.

Despite Holly Hill's allegation that the Lease terms permit it to terminate the Lease and re-enter the premises after Sears failed to cure such default after receipt of multiple notices of default (see id. ¶¶ 21-24), Sears argues that the Lease grants Holly Hill no such authority. According to Sears, the Lease provides a process "for resolving a dispute regarding Sears' net sales reports" that Holly Hill

7

failed to follow. (Br. in Supp. at 15.)  Specifically, the provisions that Sears cites require that Holly Hill notify Sears in writing within thirty days after receipt of Sears' net sales report if it is dissatisfied with the report. (Lease ¶ 7.(d).)  Holly Hill will be deemed to have accepted the report if it fails to do so. (Id.)  Further, at its own expense and within sixty days after giving notice, Holly Hill can cause an audit of Sears' net sales for the period covered by the report. (Id.)  If a detailed report of the audit is not submitted within forty-five days after the selection of the auditor, Sears' statements of net sales are deemed correct and conclusive. (Id.)  According to Sears, Holly Hill's failure to follow this process "is fatal to its claim." (Br. in Supp. at 16.)

However, as Holly Hill correctly argues, it is not presently challenging the contents of any net sales report. (Br. in Opp'n at 7-8.)  Instead, it alleges that Sears failed to provide any net sales report whatsoever for several specified months. (See Compl. ¶¶ 13.a., 20.)  As a result of such breach, the Lease permits Holly Hill to "declare the term ended; re-enter the premises . . . ; remove Tenant . . . ; and fully repossess said premises" if Sears fails to cure the default within fifteen days after written notice of the default, (see Lease ¶ 16 (providing remedies "[i]f Tenant defaults in the payment of rent, or any part thereof, or in the performance of any of Tenant's other obligations hereunder")), which Holly Hill alleges Sears has done.

8

B.

Sears also challenges the sufficiency of the written notices of default and termination for purposes of summary ejectment and attaches two letters from Holly Hill to Sears on March 17, 2016 and May 19, 2016. (Br. in Supp. at 16-19, Exs. A & B [Docs. #9-2, 9-3].) "In North Carolina, '[s]ummary ejectment proceedings are purely statutory[.]'" GRE Props. Thomasville LLC v. Libertywood Nursing Ctr., Inc., 761 S.E.2d 676, 681 (N.C. Ct. App. 2014) (alterations in original) (quoting Marantz Piano Co., Inc. v. Kincaid, 424 S.E.2d 671, 672 (N.C. Ct. App. 1993)). Pursuant to North Carolina General Statutes, a tenant may be removed when, among other things, "the tenant or lessee . . . has done or omitted any act by which, according to the stipulations of the lease, his estate has ceased." N.C. Gen. Stat. § 42-26(a)(2). A breach of a lease can serve as the basis for a summary ejectment claim only when "the lease itself provides for termination by such breach or reserves a right of reentry for such breach." GRE Props. Thomasville LLC, 761 S.E.2d at 681 (quoting Stanley v. Harvey, 369 S.E.2d 382, 384 (N.C. Ct. App. 1988)). A plaintiff "need[] only to allege a violation of the terms of the lease entitling [it] to re-enter the leased premises in order to successfully maintain an action for summary ejectment." Chrisalis Props., Inc. v. Separate Quarters, Inc., 398 S.E.2d 628, 632 (N.C. Ct. App. 1990).

Here, Holly Hill alleges that, according to the Lease, "Sears was obligated to provide a net sales report for the preceding month" within a specific period of time; "Sears failed to provide net sales reports for several months between 2010 and

9

2016"; "[i]n spite of repeated requests, both written and oral, to provide net sales reports, Sears failed to provide any of the requested net sales reports within fifteen (15) days of any of the multiple notices of default provided by [Holly Hill]"; "Sears breached conditions of the Lease for which re-entry and termination is specified"; and the "Lease grants [Holly Hill] the right to terminate the Lease and re-enter the Premises if Sears fails to meet any of its obligations under the Lease and fails to cure such default within 15 days from [Holly Hill's] notice of default to Sears". (Compl. ¶¶ 7, 8, 19-22.) As a result, Holly Hill "provided Sears with notice of termination of the Lease; however, Sears has refused to surrender the Premises." (Id. ¶ 23.) Although Sears challenges the content of the alleged notices and also argues that Holly Hill has not alleged any damages, these allegations are sufficient to state a claim for summary ejectment.

While it may ultimately be determined that the purported notices of default and termination do not comply with the Lease terms or the law, as Sears argues, and while it may be appropriate to consider the attached letters because their presence is integral to a claim for summary ejectment and Holly Hill has not challenged their authenticity, Holly Hill does note that these two letters are provided "[w]ithout any discovery regarding the history of communications or course of dealing between the parties". The argument that Holly Hill did not follow the proper eviction process is best addressed in a motion for summary judgment or

10

at trial, not at the motion to dismiss stage where Holly Hill has sufficiently alleged a claim for summary ejectment.[2]

VI.

A.

In sum, Holly Hill has sufficiently alleged a breach of contract claim as to Sears' failure to provide net sales reports for August 2014, June 2015, October 2015, and January 2016. It has also sufficiently alleged a claim for summary ejectment. However, it has failed to allege a breach of contract as to Sears' failure to operate its store in a commercially reasonable manner and as to Sears' failure to direct an intensive and continuous merchandising and promotional program.

B.

In the section of its Brief in Opposition entitled "CONCLUSION", Holly Hill states that if "the Court determines that there is some defect in Plaintiff's pleadings that warrants dismissal, Plaintiff respectfully requests that the Court grant Plaintiff leave to amend the District Complaint[3] to include further factual enhancement." (Br. in Opp'n at 15.) Because Holly Hill did not amend the

---

[2] Holly Hill attached to its Brief in Opposition an e-mail chain in response to Sears' challenging the sufficiency of the notices. (See Br. in Opp'n, Ex. A [Doc. #12-1].) As with the March and May 2016 letters, this e-mail chain was not considered in evaluating Sears' motion.

[3] Holly Hill refers to a Magistrate Complaint and a District Complaint in its Brief in Opposition. At the time that it filed its brief, its Motion to Remand was outstanding, the argument in support of which relied on the Complaint for Summary Ejectment that it had filed with the magistrate in Alamance County, North Carolina. The District Complaint is the complaint that it subsequently filed in District Court in Alamance County and that Sears removed to this Court.

11

Complaint within twenty-one days after service of Sears' motion and it does not have Sears' consent to do so now, it must seek leave of the Court. See Fed. R. Civ. P. 15(a). Although "[t]he court should freely give leave when justice so requires", id., Holly Hill has not filed a motion seeking leave of the Court to amend, nor has it attached a proposed Amended Complaint. Furthermore, permitting amendment would be futile because there is no duty to operate in a commercially reasonable manner or to direct an intensive and continuous merchandising and promotion program, see supra 5-7. See Scott v. Family Dollar Stores, Inc., 733 F.3d 105, 121 (4th Cir. 2013) (examining the bases for denying a motion to amend).

VII.

For the reasons stated herein, IT IS HEREBY ORDERED that Defendant Sears, Roebuck and Co.'s Motion to Dismiss be GRANTED IN PART AND DENIED IN PART. It is granted as to the breach of contract allegations involving the implied duty to operate in a commercially reasonable manner and the express duty to direct an intensive and continuous merchandising and promotional program. It is denied as to the breach of contract and summary ejectment claims alleging the failure to provide net sales reports.

This the 14th day of February, 2017.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge